THE STATE OF OHIO, APPELLANT, *v.* MCCARTHY, APPELLEE.

[Cite as *State v. McCarthy* (1992), 65 Ohio St.3d 589.]

(No. 91–2132—Submitted October 14, 1992—Decided December 31, 1992.)

*Lee C. Falke,* Prosecuting Attorney, and *Lorine M. Reid,* Assistant Prosecuting Attorney, for appellant.

*Flanagan, Lieberman, Hoffman & Swaim, Dennis A. Lieberman* and *Richard Hempfling,* for appellee.

*Ronald L. Collins,* Tuscarawas County Prosecuting Attorney, urging reversal for *amicus curiae,* Ohio Prosecuting Attorneys' Association.

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A.,* and *John S. Pyle,* urging affirmance for *amicus curiae,* Ohio Association of Criminal Defense Lawyers.

A. WILLIAM SWEENEY, J.  The crucial issue posed in this appeal is whether the trial court erred to the prejudice of defendant in refusing to provide the jury with a definition of "bona fide" in determining whether any of defendant's actions were performed in the course of the bona fide treatment of a patient. Since we believe the trial court erred in refusing to provide the jury with a definition of "bona fide," we affirm the judgment of the court of appeals below.

The version of R.C. 2925.03 applicable to this action provided in relevant part:

"(B) This section does not apply to manufacturers, practitioners, pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with Chapters 3719., 4715., 4729., 4731., and 4741. of the Revised Code." (Now renumbered R.C. 2925.03[B][1].)

In *State v. Sway* (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, this court held in the syllabus:

"A physician who unlawfully issues a prescription for a controlled substance not in the course of the bona fide treatment of a patient is guilty of selling a controlled substance in violation of R.C. 2925.03."

The plaintiff-appellant, state of Ohio, argues that the term "bona fide" is in general usage and that its overall definition is known to the average layperson. The state contends that in determining whether the conduct of a physician constitutes bona fide medical treatment, the jury must not consider the physician's subjective state of mind, but rather it must consider whether the physician's conduct was in accordance with the standards of medical practice established by regulations set forth in, *inter alia*, R.C. Chapters 3719 and 4731.

Defendant and *amicus*, Ohio Association of Criminal Defense Lawyers, essentially argue that under this court's decision in *Sway, supra,* a jury instruction in a prosecution of a physician-practitioner for alleged violations of R.C. Chapter 2925 should focus the jury's attention on the physician's subjective state of mind as well as objective criteria in order to determine whether a physician's actions were performed in the course of the bona fide treatment of a patient.

In *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785, this court held in the first paragraph of the syllabus:

"In a criminal case, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge. (*State v. Barron*, 170 Ohio St. 267 [10 O.O.2d 299, 164 N.E.2d 409], followed.)" Accord *State v. Nelson* (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865, paragraph one of the syllabus. See, also, *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640.

In our view, the court of appeals below was correct in holding that the trial court erred in not instructing the jury on the meaning of "bona fide," because defendant's proposed instruction, as set forth in footnote 1, satisfied the requirements of *Epperson, supra,* and other like precedents. Moreover, the trial court's charge to the jury, as set forth in footnote 2, was unsatisfactory because it required the jury to limit its inquiry to simply whether defendant

had complied with the statutes and rules regulating the conduct of physicians in prescribing or dispensing controlled substances.

Defendant's proposed instruction on the definition of "bona fide," on the other hand, would have led the jury to consider defendant's subjective state of mind, *i.e.*, his intent, in determining whether his actions constituted criminal conduct under the law. The statutory scheme of R.C. Chapter 2925 does not and cannot make mere negligence in the prescribing of drugs a crime. Criminal intent must be shown in order to support a conviction thereunder. Thus, we reject the state's argument that a physician's subjective state of mind is largely irrelevant in determining whether a physician's actions occurred in the course of the bona fide treatment of a patient.

Likewise, we reject the state's assertion that the term "bona fide" needs no elucidation or definition in a criminal prosecution under R.C. Chapter 2925. Given our holding in *Sway, supra,* and in light of the statutes and rules governing a physician-practitioner's conduct in the prescribing and dispensing of controlled substances, we find the term "bona fide" in this context to be akin to such legally important terms as "knowingly," "intentionally" or "purposely," which are otherwise familiar to lay persons, but which are also universally defined in jury instructions in criminal prosecutions throughout the country.

Our holding herein parallels those decisions from other jurisdictions which have held that a physician-practitioner's subjective state of mind must be shown, where the prosecution attempts to prove that the prescription of controlled substances goes beyond the realm of legitimate medical treatment into the area of criminal conduct. See, *e.g., People v. Downes* (1975), 394 Mich. 17, 228 N.W.2d 212 (physician); *Commonwealth v. Comins* (1976), 371 Mass. 222, 356 N.E.2d 241 (osteopath); and *State v. Young* (1991), 185 W.Va. 327, 406 S.E.2d 758 (dentist).

In addition, standardized federal jury instructions contain a good-faith test applicable in federal prosecutions of physicians brought under Section 841(a)(1), Title 21, U.S.Code. See Sand, Siffert, Loughlin & Reiss, 2 Modern Federal Jury Instructions (1992) 56–43 and 56–48, Instructions 56–19 and 56–20, Paragraph 56.02.

Consequently, inasmuch as the trial court did not charge the jury with the proposed instruction proffered by defendant, which would have permitted the jury to consider defendant's subjective state of mind in considering the criminality, or lack thereof, of defendant's conduct, the court of appeals correctly reversed the multiple convictions rendered against defendant.

Based on all the foregoing, we adhere to our prior decision in *Sway, supra,* and construe the exemption for physician-practitioners set forth in R.C.

2925.03(B), by holding that in the prosecution of a physician for alleged violations of R.C. Chapter 2925, a trial court commits reversible error when it refuses to give a requested jury instruction that permits the jury to consider a physician's subjective state of mind, as well as objective criteria, in determining whether the physician's actions were performed in the course of the bona fide treatment of a patient.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS and H. BROWN, JJ., concur.

HOLMES, WRIGHT and RESNICK, JJ., dissent.

WRIGHT, J., dissenting. This case involves a narrow issue of statutory interpretation: whether a physician can be exempt from criminal liability for drug trafficking if he or she prescribes a controlled substance in subjective "good faith." Because the plain language of R.C. 2925.03(B)(1) exempts physicians from criminal liability only if they act "in accordance with" *objective* requirements set forth in specific sections of the Revised Code and the Ohio Administrative Code, I would hold that a physician's subjective "good faith" is not sufficient to entitle him or her to the statutory exemption. Therefore, I dissent from the majority's conclusion that the jury should have been permitted to consider McCarthy's subjective state of mind.

R.C. 2925.03(A) prohibits the sale of controlled substances. R.C. 2925.-03(B)(1) creates a specific exemption to that general prohibition for physicians acting in the course of their practice. It provides in part:

"(B) This section does not apply to the following: (1) Manufacturers, *practitioners,* pharmacists, owners of pharmacies, and other persons *whose conduct is in accordance with* Chapters 3719. * * * and 4731. * * * of the Revised Code * * *[.]" [3] (Emphasis added.)

R.C. Chapters 3719 and 4731, along with Ohio Adm.Code Chapter 4731–11, in part govern the dispensation of drugs by physicians. Ohio Administrative Code Chapter 4731–11 is particularly important because it deals specifically with controlled substances. These statutes and regulations create a series of procedural requirements physicians must satisfy before they are permitted to prescribe controlled substances. In *State v. Sway* (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, the court considered R.C. 2925.03 as applied to a physician. The court looked specifically at the physician's exemption in R.C.

---

3. Of the four Revised Code chapters specified in R.C. 2925.03(B)(1), only Chapters 3719 and 4731 apply to physicians.

2925.03(B)(1). Justice Holmes, for a unanimous court, wrote: " * * * [W]e believe that if a physician does not act in accordance with such regulations [R.C. Chapters 3719 and 4731] he is subject to criminal liability under R.C. 2925.03(A) when his actions fall therein. It is patently clear from the facts presented that Dr. Sway did not conform to the directives specifically set forth in R.C. 4731.22 * * *. Thus, we are unable to find any statutory provision which would preclude us from finding appellee liable under R.C. 2925.03(A)." *Sway,* 15 Ohio St.3d at 114, 15 OBR at 267, 472 N.E.2d at 1067. Later in the opinion this statement was capsulized by the court in holding that physicians are criminally liable for selling controlled substances if the sale is "not in the course of the bona fide treatment of a patient." *Id.* at 115, 15 OBR at 268–269, 472 N.E.2d at 1068.

At the core of today's case is a dispute over the proper definition of the term "bona fide," as used in *Sway.* There appear to be two alternatives: "good faith," as argued by McCarthy, and "in accordance with" R.C. Chapters 3719 and 4731 as stated in R.C. 2925.03(B)(1).

McCarthy argued and the court of appeals below agreed that "bona fide" means "good faith" and the jury must be instructed that a doctor cannot be convicted of violating R.C. 2925.03 if his or her treatment was in good faith. In its opinion, the court of appeals admittedly read *Sway* 's holding expansively. It believed that *Sway* meant "that a physician loses the exemption when he prescribes controlled substances for purposes other than bona fide treatment," *and* that "bona fide" necessarily means "good faith." I disagree.

Although "bona fide" is often understood to mean "good faith," neither *Sway* nor R.C. 2925.03(B)(1) mandates a "good faith" standard for the physician's exemption. The plain language of R.C. 2925.03(B)(1) states that a physician is only exempt from criminal liability if he or she acts "in accordance with" R.C. Chapters 3719 and 4731 when prescribing or dispensing controlled substances. These statutes and the attendant regulations in Ohio Adm.Code Chapter 4731–11 are simple and clear: they require physicians to maintain proper records; take certain precautions; and act, in short, as reasonable physicians would in the same circumstances. These black and white requirements protect legitimate doctors from reproach and protect society from illegitimate doctors who would use their positions to distribute controlled substances with impunity. The existence of objective criteria makes the line between legitimate treatment and drug trafficking very easy for both physicians and officials in the criminal justice system to discern. Because objective criteria are so desirable, nowhere in R.C. Chapters 3719 and 4731, or in Ohio Adm.Code Chapter 4731–11, is there stated a good faith standard for prescribing controlled substances. The General Assembly wisely decided that the

subjective intent of a physician prescribing controlled substances is not relevant in determining whether a physician's actions are in accord with the law.

*Sway* is not inconsistent with the plain language of R.C. 2925.03(B)(1). I read the holding of *Sway* to equate the term "bona fide" to this statutory provision that physicians must act "in accordance with" R.C. Chapters 3719 and 4731. I do not accept the majority's conclusion that "bona fide" in all circumstances means "good faith" because this conclusion ignores the statute's plain language.

The instructions given to the jury in this case were correct. Holding a physician to an objective professional standard rather than a subjective "good faith" standard does not, as McCarthy argued, undermine the *mens rea* requirement of drug trafficking. The state still must prove that the defendant knowingly and intentionally sold illegal drugs. Moreover, the state must prove beyond a reasonable doubt that the defendant-physician knowingly sold those drugs without complying with the statutes and regulations which define professional conduct.

Accordingly, I would reverse the court of appeals and reinstate McCarthy's convictions.

HOLMES and RESNICK, JJ., concur in the foregoing dissenting opinion.